UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHELLY LAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-cv-00768-NCC |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Shelly Land ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 15), and Defendant filed a brief in support of the Answer (Doc. 20). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 5).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on June 5, 2013 (Tr. 131-39). Plaintiff was initially denied on July 31, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 52-66, 74-75). After a hearing, by decision dated January 16, 2015, the ALJ found Plaintiff not disabled (Tr. 9-29). On April 7, 2016, the Appeals

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Council issued a decision denying Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 22, 2013, the alleged onset date (Tr. 14). The ALJ found Plaintiff has the severe impairments of fibromyalgia, degenerative disc disease, neuropathy, carpal tunnel syndrome, obesity, depression and posttraumatic stress disorder but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a light work with the following limitations (Tr. 16). She would be limited to jobs that do not require constant, rapid or repetitive hand movements (*Id.*). She may do simple work with occasional interaction with co-workers and members of the general public (*Id.*). She retains the ability to maintain attention and concentration for a minimum of two-hour periods at a time, to adapt to changes in the workplace at a basic level and to accept supervision on a basic level (*Id.*). She can occasionally stoop, kneel, crouch, or crawl; can never climb stairs, ramps, ladders, ropes, or scaffolds; should avoid hazards such as unprotected heights and dangerous machinery; would be limited to simple, routine, repetitive tasks with simple work related decisions; and can have only superficial interactions with the general public and coworkers, meaning she should deal with things instead of people (*Id.*). The ALJ found Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including office helper, shipping-receiving weigher, and folding machine operator (Tr. 22-23).

Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 23-24). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ erred in failing to properly weigh the medical opinions of Dr. Greg Maynard, D.O., Dr. Steven Goldstein, M.D., and Dr. Mark Altomari, Ph.D. (Doc. 15 at 11-20). Second, Plaintiff argues that the RFC adopted by the ALJ was not supported by substantial evidence of the record as a whole (*Id.* at 20-22). Because the ALJ erred in weighing the treating physician's

opinion regarding Plaintiff's physical impairments in reaching his RFC determination, the Court will address that issue alone.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Id.* "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (citing *Metz v. Shalala*, 49 F.3d 374, 378 (8th Cir. 1995)). This is especially true when the consulting physician's opinion is "contradicted by the evaluation of the claimant's treating physician." *Hancock v. Sec'y of Dep't of Health, Educ. & Welfare*, 603 F.2d 739, 740 (8th Cir. 1979).

Greg Maynard, D.O. ("Dr. Maynard"), a primary care doctor and Plaintiff's treating physician,[2] completed two medical source statements on behalf of Plaintiff (Tr. 829-32, 869-71). In the first, dated January 29, 2014, Dr. Maynard addresses Plaintiff's physical impairments (Tr. 829-32). Dr. Maynard opined that Plaintiff had the symptoms of generalized pain and fatigue (Tr. 830). He opined that the presence of these symptoms was corroborated by clinical findings and objective signs including multiple tender points above and below the waistline (*Id.*). Dr. Maynard opined that these symptoms caused various limitations related to Plaintiff's ability to

---

[2] The parties do not dispute that Dr. Maynard is Plaintiff's treating physician (*See* Doc. 15 at 11; Doc. 20 at 4).

perform exertional functions including the ability to lift no more than 10 pounds occasionally (Tr. 831). He further opined that Plaintiff could rarely twist and balance, could occasionally stoop, but could never crouch, crawl or climb (*Id.*). He indicated that Plaintiff could occasionally reach but could only rarely handle, finger or feel (*Id.*). Dr. Maynard opined Plaintiff could sit for up to 15 minutes at one time and could stand for up to 20 minutes at one time (*Id.*). After standing more than 30 minutes at a time, Dr. Maynard opined the claimant would need to sit for 10 to 15 minutes as a result of her pain, chronic fatigue, and muscle weakness (Tr. 832). He noted Plaintiff would require the ability to shift positions at will from sitting, standing or walking (Tr. 831). He also opined that Plaintiff would need the ability to elevate her legs as much as 40 percent of the time throughout the day because of back pain and lower extremity pain (Tr. 832). Dr. Maynard indicated that all of these limitations would likely cause Plaintiff to be off task for up to 25 percent of the workday and would render her incapable of "low stress" work (*Id.*). He further opined Plaintiff would likely be absent from work more than four days per month because of her symptoms (*Id.*).

Dr. Maynard also completed a medical source statement regarding Plaintiff's mental health impairments dated May 22, 2014 (Tr. 869-71). Dr. Maynard found Plaintiff to be markedly limited[3] in 15 areas and extremely limited[4] in 2 areas including the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 870-71).

---

[3] Markedly limited is defined as "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interfere[] with the ability to function independently" (Tr. 870).

[4] Extremely limited is defined as "[i[mpairment level preclude[s] useful functioning in this category" (*Id.*).

The ALJ afforded Dr. Maynard's opinions "only minimal weight" (Tr. 19). The ALJ found that Dr. Maynard's opinion regarding Plaintiff's physical limitations not to be supported by the objective evidence or his own treatment notes (*Id.*). For example, the ALJ noted that while Dr. Maynard opined that Plaintiff's symptoms of generalized pain and fatigue were corroborated by clinical finding and objective signs including multiple tender points above and below the waistline, Dr. Maynard failed to describe the location or number of positive points (*Id.*). Further, the ALJ found Dr. Maynard's opinion to be inconsistent with Plaintiff's own reported activities of daily living which "demonstrate she is far more capable than alleged in Dr. Maynard's statement" (*Id.*). Turning to the mental health opinion, the ALJ first noted that Dr. Maynard is not a mental health specialist (*Id.*). The ALJ also indicated that Dr. Maynard's treatment notes do not contain any detailed objective findings regarding the Plaintiff's mental status and to the extent that they do, Dr. Maynard appears to have "simply document[ed] the [Plaintiff's] own subjective complaints, such as her report of crying spells" (*Id.*).

Instead, the ALJ gave greater weight to the opinions of two non-examining state agency physicians. First, the ALJ afforded Mark Altomari, Ph.D.'s ("Dr. Altomari"), a non-examining state agency psychologist, opinion significant weight, finding it consistent with the record (Tr. 22). Dr. Altomari reviewed the evidence of record on July 31, 2013 and issued a case analysis including a residual functional capacity (Tr. 52-65). In his assessment, Dr. Altomari opined that Plaintiff retained the ability to understand, remember and carry out short, simple and moderately complex instructions (Tr. 62). He further opined that Plaintiff would be able to adapt to most changes in the workplace and could make simple work-related decisions (Tr. 64). He noted that Plaintiff did not have any significant difficulties related to authority figures or to co-workers in small numbers for short periods of time (*Id.*). Dr. Altomari also opined that Plaintiff is

moderately limited in her ability to maintain attention and concentration for extended periods; her ability to work in coordination with or in proximity to others without being distracted by them; her ability to interact appropriately with the general public; her ability to respond appropriately to changes in the work setting (Tr. 62-63). Dr. Altomari concluded that while Plaintiff has some limitations in the performance of certain work activities, these limitations would not prevent Plaintiff from performing past relevant work as a med tech (Tr. 64).

Next, the ALJ afforded the opinion of Dr. Steven Goldstein, M.D., a non-examining state agency physician, little weight except for Dr. Goldstein's conclusion that the claimant does not meet or equal any listing which the ALJ afforded significant weight (Tr. 20). Dr. Goldstein reviewed the evidence of record on December 11, 2014 and issued a medical opinion (Tr. 1060-91). Although Dr. Goldstein's opinion was admitted into evidence at Plaintiff's hearing without objection from counsel, the Commissioner admits that two pages were inadvertently excluded from the original exhibit (Tr. 33, 1060-73). Indeed the complete exhibit was filed after the hearing on December 23, 2014 (Tr. 1075-91). The two pages at issue can be located in the transcript at page numbers 1077 and 1078. On page 1077, the questionnaire includes a list of Plaintiff's alleged impairments and Dr. Goldstein's checkmark answer no to the question "does the medical evidence support all of these allegations" (Tr. 1077). On that same page, Dr. Goldstein checks yes to the question "does the medical evidence support some of the allegations" (*Id.*). On page 1078, Dr. Goldstein lists the following conditions as supported by the medical evidence: neuropathy, back pain, obesity, and hyperthyroid (Tr. 1078). Although the question prompts Dr. Goldstein to also list the items of medical evidence supporting each allegation, he only indicates evidence in support of Plaintiff's limitation of neuropathy (*Id.*). Specifically, he identifies exhibit 3F and notes nerve compression (*Id.*). In addition to the above indicated notes,

in his opinion Dr. Goldstein identifies the following medical impairments as being established by the medical evidence: low back pain without definitive diagnosis, fibromyalgia without demonstration of tender points, obesity and peroneal nerve palsy (Tr. 1075). Dr. Goldstein nonetheless concluded that none of Plaintiff's impairments, combined or separately, meet or equal an impairment described in the Listing of Impairments (*Id.*). Further, when asked to complete a Medical Statement of Ability to Do Work Related Activities, Dr. Goldstein indicated that he "cannot say as record is not detailed enough to opine an RFC. From my experience patient would be less than sed[entary] due to deconditioning" (Tr. 1079).

In making his determination regarding what weight to assign to Dr. Goldstein's opinion, the ALJ noted that Dr. Goldstein "failed to cite any specific factual bases in the record to show the claimant was deconditioned beyond the ability to engage in even sedentary activity" (Tr. 20). The ALJ also indicated that this statement was inconsistent with Dr. Goldstein's ultimate conclusion that the record was insufficient to formulate a residual functional capacity determination (*Id.*). Finally, the ALJ found Dr. Goldstein's opinion generally inconsistent with the medical evidence (*Id.*). Specifically, the ALJ noted that the medical evidence is sufficient to conclude that Plaintiff would be capable of a reduced range of light work (Tr. 20).

As a preliminary matter, considering the relative brevity of Dr. Goldstein's opinion, as further indicated above, and the ALJ's reliance on a portion of it, the omission of two pages from the report as admitted *prior* to the hearing is significant and therefore the inability of counsel to cross examine or otherwise address the opinion during Plaintiff's hearing is troubling. *See Ellis v. Astrue,* No. 4:07CV1031 AGF, 2008 WL 4449452, at *17 (E.D. Mo. Sept. 25, 2008) (finding that because the court could not assess the impact of the evidence omitted following the hearing

on the ALJ's credibility analysis, it could not conclude that failing to afford plaintiff a meaningful opportunity to confront this evidence was harmless error).

Regardless, neither the opinion of Dr. Goldstein nor the opinion of Dr. Altomari constitutes substantial evidence as neither physician actually examined Plaintiff. *Coleman v. Astrue*, 498 F.3d 767, 772 (8th Cir. 2007) (quoting *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2002) (internal citation marks omitted) ("The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole.").

Further, while an ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," neither opinion provides a counter narrative to Dr. Maynard's opinion regarding Plaintiff's physical limitations. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Goff*, 421 F.3d at 790). *See also Faulk v. Colvin*, No. 2:15-CV-04146-NKL, 2016 WL 1275056, at *4 (W.D. Mo. Apr. 1, 2016) (finding the ALJ erred in his reliance on a consultative examiner's opinion when plaintiff's treating physicians found plaintiff incapable of functioning without significant limitations; "the ALJ was not entitled to rely on this opinion while largely ignoring and at times mischaracterizing the remainder of the record."). Although Dr. Altomari addresses Plaintiff's physical impairments in his assessment, he is a psychologist and the ALJ fails to include any mention of it in his opinion (*See* Tr. 22). *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). To the extent that Dr. Goldstein addresses Plaintiff's physical impairments, his opinion appears to be supportive of limitations suggested by Dr. Maynard.

Next, to the extent the ALJ suggests that Dr. Maynard's findings regarding Plaintiff's physical impairments were inconsistent with his own records or that they were inconsistent with the record as a whole, a review of the record indicates otherwise. First, Plaintiff's tender points are well documented throughout the record. Dr. Maynard notes that Plaintiff "exhibits tenderness" and is "tender to palp[atation]" of "LS spine"[5] and "paraspinal musculature"[6] (Tr. 593). He further indicates that Plaintiff has bilateral joint tenderness (*Id.*). Dr. Maynard continues to note Plaintiff's tender points throughout his treatment records (*See, e.g.,* Tr. 610 ("Multiple tender points above and below waistline"), 619 (same); 638 (same), 932 (same)). While the ALJ is correct in noting that Dr. Maynard fails to indicate exactly the location and number of Plaintiff's tender points, another physician similarly concludes that Plaintiff has trigger points. Specifically, Dr. Glenn Kunkel, M.D., notes, "The patient has several trigger points to the upper thoracic and cervical areas" (Tr. 240).

Second, Plaintiff's other physical impairments are also well documented. Plaintiff presented several times with "decreased range of motion, tenderness, and spasm" (Tr. 382, 389, 584). Plaintiff also repeatedly presented with foot pain and issues walking. For example, on June 27, 2011, Dr. Maynard noted that Plaintiff's feet were tender to palpatation as to plantar surface anterior to calcaneus[7] and referred Plaintiff to podiatry (Tr. 349-50). Further, while

---

[5] Although unclear, Dr. Maynard is likely referencing the lumbosacral spine. The lumbosacral spine is the lower part of the spine which includes the lumbar region and the sacrum. *Lumbosacral spine x-ray*, MedlinePlus, U.S. Nat'l Lib. of Med., https://medlineplus.gov/ency/article/003807.htm (last updated Apr. 13, 2013).

[6] "The paraspinal muscles refer to the muscles next to spine. They support the spine and are the motor for movement of the spine." *A Patient's Guide to Anatomy and Function of the Spine*, Univ. of Md. Med. Cent., http://www.umm.edu/programs/spine/health/ guides/anatomy-and-function (last visited Sept. 7, 2017).

[7] "The bones of the feet are commonly divided into three parts: the hindfoot, midfoot, and forefoot. Seven bones—called tarsals—make up the hindfoot and midfoot. The calcaneus (heel

reports indicate that Plaintiff is able to walk without support, she must take short steps and has been noted as "guarding [her] back with movement and ambulation" (Tr. 265, 476, 478, 481). Indeed, Plaintiff reported to Dr. Maynard that her back pain radiates down both legs and is worse with "weight bearing and ambulation" (Tr. 592). *See also* Tr. 609 ("Patient indicates paint to right side radiates to back. . . . Indicates sharp shooting pain.").

Third, while the extent of diagnostic testing is limited, those diagnostic exams of record support these various medical notes. Specifically, on November 9, 2012, Plaintiff presented to Dr. M. Choudhary, M.D. for an electrophysiological study (Tr. 482-86). Dr. Choudhary concluded, "This is an abnormal electrophysiological study. The findings [are] consistent with bilateral peroneal neuropathy which is axonal in nature" (Tr. 486). According to the United States National Library of Medicine, "The peroneal nerve is a branch of the sciatic nerve, which supplies movement and sensation to the lower leg, foot and toes. Common peroneal nerve dysfunction is a type of peripheral neuropathy (damage to nerves outside the brain or spinal cord)." *Common peroneal nerve dysfunction*, U.S. Nat'l Lib. of Med., https://medlineplus.gov/ency/article/000791.htm (last updated Aug. 13, 2015). Also, on January 9, 2013, Dr. Karen Rice, MD ("Dr. Rice"), a rheumatologist, administered clinical fibromyalgia diagnostic tests to determine Plaintiff's Widespread Pain Index ("WPI") and the Symptom Severity ("SS") scores (Tr. 488). While Dr. Rice did not conclusively diagnose Plaintiff with fibromyalgia, Dr. Rice found Plaintiff's scores, a WPI score of 7 and an SS score of 10,[8] to meet

---

bone) is the largest of the tarsal bones in the foot. It lies at the back of the foot (hindfoot) below the three bones that make up the ankle joint." *Calcaneus (Heel Bone) Fractures*, Am. Acad. of Orthopedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=A00524 (last visited Sept. 7, 2017).

[8] According to Dr. Rice's notes, the diagnostic criteria for a fibromyalgia diagnosis are a WPI score greater than or equal to 7 and an SS score greater than or equal to 5 or a WPI score of 3-6 and an SS score greater than or equal to 9 (Tr. 488).

the criteria for fibromyalgia and that the scores, along with the duration of the symptoms and the generalized nature of the pain, meant that "fibromyalgia is likely" (*Id.*).

Finally, although the ALJ found that Plaintiff's reported activities of daily living demonstrated the she is "far more capable than alleged in Dr. Maynard's statement, the record reflects that while Plaintiff may be capable of performing various activities of daily living, Plaintiff does not appear to have "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) (quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). First, Plaintiff consistently notes that her ability to perform certain tasks is limited by her pain level and that when she completes chores, she does so very slowly because she needs to take multiple breaks (*See, e.g.,* Tr. 196 (regarding caring for her hair, Plaintiff notes that "[i]t hurts to raise arms."); Tr. 39 ("[I]t takes me two hours, probably, to do the dishes. I put them in the water and then I go back and sit down and then I go and do a few and then I go back and sit down.")). Further, Plaintiff notes that she needs assistance completing many tasks. For example, although Plaintiff is the primary caregiver to her granddaughter, she notes on her function report that her friend, Diane, helps her (Tr. 196). She also testified that her husband and her son both help her take care of her granddaughter (Tr. 35). Diane, in a third party function report, indicates that she helps Plaintiff frequently with other daily tasks (*See* Tr. 179-86).

In sum, the ALJ did not provide "good reasons" for assigning Dr. Maynard's Medical Source Statement-Physical "little weight" in determining Plaintiff's RFC. *Reece*, 834 F.3d at 909. Thus, remand is required. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. Mar. 17, 2004) ("Failure to provide good reasons for discrediting a treating physician's

14

opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574-DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand."); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole. Though the Court does not make an ultimate determination regarding Plaintiff's disability, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to properly evaluate and weigh the medical opinion evidence; formulate a new residual functional capacity for Plaintiff based on the medical evidence in the record; further develop the medical record if necessary; and then continue with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 25th day of September, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE